UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

ABIGAIL CARILUS,

    Plaintiff,

v.                                                                   Case No. 5:24-cv-546-JA-PRL

UNITED WHOLESALE
MORTGAGE, LLC,

    Defendant.
_____

### ORDER

This case is before the Court on Plaintiff, Abigail Carilus's motion for partial summary judgment (Doc. 20), Defendant, United Wholesale Mortgage, LLC's response (Doc. 22), and Plaintiff's reply (Doc. 28). Based on the Court's review of the parties' submissions, the motion must be granted.

### I.    BACKGROUND

In April 2023, Plaintiff executed a Uniform Residential Loan Application with Defendant, seeking a mortgage in connection with real property located in Mount Dora, Florida. (Terrasi Aff., Doc. 23-1 at 1–6, ¶ 4). Plaintiff represented on her loan application that she was employed by Prolink Healthcare, LLC. (*Id.* ¶¶ 8–10, 14). After Plaintiff completed the loan application, the parties executed the mortgage contract and Plaintiff acquired the property. (*Id.* ¶ 10; Doc. 23-1 at 37–39; Doc. 23-1 at 41–44). A few months later, Defendant came to believe

that Plaintiff's representation regarding her employment was inaccurate, and it mailed a letter to Plaintiff stating that she "provided materially false information" on the application "and [was] therefore in default of the [s]ecurity [i]nstrument." (Terrasi Aff. ¶ 18; Doc. 23-1 at 95).

Plaintiff retained counsel who, on May 24, 2024, transmitted to Defendant what Plaintiff characterizes as a notice of error (NOE) under 12 C.F.R. § 1024.35 and a request for information (RFI) under 12 C.F.R. § 1024.36. (Doc. 23-1 at 97–98). In the NOE, Plaintiff's counsel notified Defendant that it improperly "threaten[ed] [Plaintiff] with foreclosure and a lawsuit for allegedly misrepresenting facts on her mortgage application," a claim that Plaintiff "categorically denied." (Doc. 23-1 at 97). In Plaintiff's RFI, Plaintiff asked Defendant to provide the following information:

> 1. A copy of all correspondence, including but not limited to, letters, emails, text messages and all other forms of communication, to and from the borrower since loan inception.
>
> 2. Do you believe that our client has violated any term of the mortgage? If so, please state which precise provision you feel that our client has violated and state all facts known to you that support your conclusion.
>
> 3. Has ownership or servicing of this loan transferred since loan inception? If so, please list the name of each company that has owned or serviced this loan since inception and the date of each transfer.
>
> 4. Has our client made all payments that have come due under the loan?

2

> 5. Has our client been in payments default under the terms of the loan since inception? If so, please state the date the missed payment was due and whether that payment default was cured.
>
> 6. Please provide a life of loan transaction history.
>
> 7. Please list all fees and charges assessed to the loan since inception.
>
> 8. For each fee and charge that has been assessed, please provide a copy of the supporting invoice.

(Doc. 23-1 at 97–98). Defendant did not respond, which it attributes to Plaintiff sending the NOE and RFI to an incorrect address. (Terrasi Aff. ¶ 19).

Because Defendant had not responded to the NOE or RFI, Plaintiff's counsel transmitted a notice and opportunity to cure letter to Defendant on July 24, 2024. (Doc. 23-1 at 101). The notice stated that Plaintiff's NOE and RFI were delivered on May 28, 2024, and that "the response was due within 30 business days of receipt" but that Defendant had failed to respond. (*Id.*). The letter extended "an additional 10 days" for Defendant to respond. (*Id.*). Defendant asserts that this notice was also sent to an incorrect address. (Terrasi Aff. ¶ 21).

Defendant ultimately received Plaintiff's correspondence from Defendant's counsel—not from Plaintiff—and Defendant mailed a letter to Plaintiff on August 6, 2024, to validate the debt related to the loan and provide the note, mortgage, and loan history. (*Id.* ¶ 21; Doc. 23-1 at 106). That same day, Defendant's counsel separately emailed Plaintiff's counsel to request an

3

extension of time to respond to the NOE and RFI, which Plaintiff's counsel agreed to. (Doc. 21-2; Terrasi Aff. ¶ 22). However, Defendant did not issue another response because Defendant determined that its August 6 response was legally sufficient. (*Id.* ¶ 22).

Plaintiff alleges that Defendant failed to timely respond to the NOE and RFI and that Defendant's August 6 letter failed to address the NOE or the eight issues raised in the RFI. Plaintiff brought suit under the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601–2617 (RESPA), and its associated regulations, 12 C.F.R. §§ 1024.1–1024.41 (Regulation X). (Doc. 1). Plaintiff now moves for partial summary judgment on her claims. (Doc. 20).

## II.  LEGAL STANDARDS

On a motion for partial summary judgment, a district court views "all facts and reasonable inferences in the light most favorable to the nonmoving party." *Wesson v. Huntsman Corp.*, 206 F.3d 1150, 1152 (11th Cir. 2000). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "genuine" only if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

The movant "bears the initial responsibility of informing the district court of the basis for its motion" and "identifying those portions" of the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant demonstrates the absence of a genuine issue of material fact, "[t]he burden then shifts to the non-moving party" to "present affirmative evidence to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). To satisfy its burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

### III. DISCUSSION

Plaintiff argues that Defendant's responses to the NOE and RFI were untimely and otherwise legally deficient under Regulation X and, correspondingly, under RESPA. Plaintiff also moves for summary judgment on damages.[1] Defendant asserts that Plaintiff's NOE and RFI did not require any further response because Plaintiff's inquiries did not pertain to the "servicing" of the loan and that Plaintiff was not damaged by Defendant. The Court addresses these arguments in turn.

---

[1] Plaintiff states that she "reserves" on the issue of damages for "emotional distress," which the Court takes to mean that Plaintiff is not seeking summary judgment on that issue. (Doc. 20 at 13). Accordingly, the Court will not address it.

5

### A. RESPA and Regulation X

"RESPA is a consumer protection statute that was enacted for the benefit of mortgage borrowers . . . ." *Sterling v. Nationstar Mortg. LLC*, No. 6:24-cv-1029, 2025 WL 807288, at *4 (M.D. Fla. Mar. 13, 2025) (citing *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1242 (11th Cir. 2016)). "RESPA requires [loan] servicers to comply with the obligations specified in 12 U.S.C. § 2605 as well as any regulations issued to carry out the statute's purposes." *Baez v. Specialized Loan Servicing, LLC*, 709 F. App'x 979, 980 (11th Cir. 2017).[2] Section 2605(f) creates a private right of action for a borrower if a servicer fails to comply with "any provision of" § 2605. 12 U.S.C. § 2605(f). "A borrower can recover 'any actual damages to the borrower as a result of the failure' [to comply]." *Beagle v. Flagstar Bank, FSB*, No. 23-CV-81183-RLR, 2023 WL 8241514, at *4 (S.D. Fla. Nov. 20, 2023) (alteration in original) (quoting 12 U.S.C. § 2605(f)(1)(A)), *report and recommendation adopted*, 2023 WL 8234644 (S.D. Fla. Nov. 28, 2023).

Section 2605(e) "contains a mechanism enabling borrowers to send formal written requests"—known as Qualified Written Requests (QWR). *Sterling*, 2025 WL 807288, at *5. "[Section] 2605(e) imposes a duty upon servicers to respond

---

[2] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Constr., Inc.*, 487 F.3d 1340, 1345 (11th Cir. 2007).

6

to QWRs and provides specific parameters for what constitutes a proper and timely response"—but only when the QWR pertains to "the servicing of" a borrower's loan. *Id.* (quoting § 2605(e)(1)(A)). RESPA defines "servicing" as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan" and "making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3).

"In 2014, the [Bureau of Consumer Protection] enacted Regulation X as RESPA's 'primary implementing legislation.'" *Sterling*, 2025 WL 807288, at *4 (quoting *Berene v. Nationstar Mortg., LLC*, 800 F. App'x 756, 760 (11th Cir. 2020)). Regulation X "contain[s] additional provisions enabling borrowers to contact their servicers about their loans, including by sending NOEs and RFIs." *Id.* at *5 (citing 12 C.F.R. §§ 1024.35, 1024.36). "These provisions . . . provide detailed guidance regarding the proper time, manner, and content of servicers' responses to NOEs and RFIs." *Id.* at *6 (citing §§ 1024.35(c)–(i), 1024.36(b)–(i)). In response to an NOE, a servicer must either correct the claimed error or, after an investigation, issue a written response to the borrower explaining its finding that no error occurred. *See* 12 C.F.R. § 1024.35(e). In response to an RFI, the servicer must provide the borrower with the requested information or issue a written statement that the requested information is not available to the

7

servicer. *See* 12 C.F.R. § 1024.36(d). Servicers must complete these responses within thirty business days of receipt of the NOE or RFI. *See id.*; § 1024.35(e).

Section 1024.36(a) requires a servicer to "comply with the requirements of" § 1024.36 when it receives an RFI from a borrower that includes: (1) the name of the borrower; (2) information pertaining to the borrower's mortgage loan account; and (3) the information the borrower is requesting with respect to their mortgage. It further clarifies that "[a] qualified written request that requests information relating to the servicing of the mortgage loan is a request for information for purposes of this section." *Id.* Likewise, § 1024.35(a) obligates a servicer to "comply with the requirements of" § 1024.35 when it receives an NOE from a borrower under the same parameters set forth in § 1024.36(a) but further clarifies that "[a] qualified written request that asserts an error relating to the servicing of a mortgage loan is a notice of error for purposes of this section."

Plaintiff argues that in §§ 1024.35 and 1024.36, Regulation X establishes NOEs and RFIs distinct from QWRs and that Regulation X expands Defendant's response duties beyond RESPA's dictate in 12 U.S.C. § 2605(e) for servicers to respond to QWRs pertaining to the "servicing" of the loan. (*See* Doc. 20 at 10–11). Defendant responds that it properly construed Plaintiff's RFI and NOE as QWRs under § 2605(e) and that because Plaintiff's inquiries pertained only to

8

the "origination" of the loan rather than the "servicing" of the loan, no response from Defendant was legally required. (*See* Doc. 22 ¶ 21; Terrasi Aff. ¶ 22). There is case law that supports both positions, as "[d]istrict courts in the Eleventh Circuit are divided on whether RFIs and NOEs provide independent avenues for obtaining information from servicers or are simply two types of QWRs." *Sterling*, 2025 WL 807288, at *6 (*comparing Simmonds v. Nationstar Mortg. LLC*, No. 5:23-cv-2, 2024 U.S. Dist. LEXIS 187028, at *6 (N.D. Fla. Sept. 24, 2024), *with Lopez v. Nationstar Mortg. LLC*, No. 1:20-cv-22496-KMM, 2021 WL 4990958, at *3–4 (S.D. Fla. Jan. 19, 2021)).

This Court agrees with those district courts that have determined that "the plain language of RESPA and Regulation X supports a finding that NOEs and RFIs are separate and distinct from QWRs." *Sterling*, 2025 WL 807288, at *6 (citing *Simmonds*, 2024 U.S. Dist. LEXIS 187028, at *7; *Pollack v. Seterus, Inc.*, No. 17-60475-CIV, 2017 WL 6343676 at *3 (S.D. Fla. Dec. 11, 2017); *Lynch v. Wells Fargo Bank, N.A.*, No. 18-23560-CIV, 2019 WL 13202780 at *11 (S.D. Fla. June 19, 2019). "Under its plain language, § 1024.36(a) of Regulation X enables borrowers to send RFIs 'with respect to the borrower's mortgage loan.'" *Id.* at *7. And RESPA, in 12 U.S.C. § 2605(e)(1)(A), "confines QWRs to requests for information specifically pertaining to servicing of the borrower's loan." *Id.* Thus, under 12 C.F.R. § 1024.36(a), "a borrower can submit 'any written request

for information from a borrower,' or an RFI, and a type of RFI that can be submitted by a borrower is a [QWR], which must comply with the requirements of § 1024.31 and relate to the servicing of a mortgage loan." *Lynch*, 2019 WL 13202780 at *11. "[S]imply put, all QWRs are RFIs but not all RFIs are QWRs." *Id.* Thus, the Court finds that Regulation X permits "borrowers to seek a broader range of information through RFIs than they were previously able to seek using QWRs." *Sterling*, 2025 WL 807288, at *6 (collecting cases).

Having found that Regulation X obligates servicers to respond to RFIs and NOEs within thirty business days regardless of whether the inquiry pertained to the servicing of the loan, the Court will assess the facts of this case. There is no dispute that Plaintiff sent Defendant the RFI and NOE on May 24, 2024, and that Defendant did not respond within thirty business days. (*See* Doc. 20 ¶¶ 4–5; Doc. 22 ¶¶ 5–8). Plaintiff claims she provided Defendant a notice of opportunity to cure two months later, to which Defendant responded on August 6 in a manner Plaintiff argues was legally deficient. (*See* Doc. 23-1 at 101; Doc. 23-1 at 106). Because the Court has found that Defendant was obligated to respond to the NOE and RFI within thirty business days pursuant to 12 C.F.R. §§ 1024.35 and 1024.36 and that it failed to do so, Defendant's sole remaining argument against its liability is that Plaintiff's counsel mailed the RFI, NOE,

and notice to an incorrect address, excusing Defendant's obligation to respond. (*See* Doc. 22 ¶¶ 6–7).

Upon review of the record, the Court finds there is no genuine dispute that the RFI, NOE, and Notice were sent to the address that Defendant designated to receive NOEs and RFIs. (*Compare* Doc. 23-1 at 97, 101, *with* Doc. 28-1 at 1–2). Defendant's website states that RFIs, NOEs, and QWRs should be mailed to P.O. Box 619098, Dallas, TX 75261-9741 and addressed "Attn: Customer Relations"—the exact addressee and mailing address listed on Plaintiff's NOE, RFI, and Notice. (*See id.*). Defendant's unsupported assertion that these documents were mailed to an incorrect address does not create a triable issue of fact. Moreover, Defendant's August 6 correspondence did not address the issues raised in Plaintiff's NOE or RFI and thus does not constitute a legally sufficient response under §§ 1024.35(c)–(i) and 1024.36(b)–(i). (*See* Doc. 23-1 at 106). There is no genuine dispute that Defendant failed to comply with its obligations under Regulation X and, correspondingly, RESPA. Plaintiff is entitled to summary judgment as to liability for these violations as a matter of law.

### B. Damages

Plaintiff claims that because Defendant failed to provide adequate responses to the NOE and RFI, she suffered damages in the form of "photocopying costs and postage costs incurred in mailing Plaintiff's notice and

opportunity to cure," and "wast[ed time] having to consult with an attorney." (Doc. 20 at 12 (citing Doc. 23-1 at 101)). Plaintiff seeks a judgment that she is entitled to "actual damages and nominal damages." (*Id.*).

"RESPA makes violators liable to individual borrowers for '(A) any actual damages to the borrower as a result of the failure; and (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section.'" *Renfroe*, 822 F.3d at 1245–46 (quoting 12 U.S.C. § 2605(f)(1)). "RESPA states that actual damages arise 'as a result of' the servicer's alleged violation.'" *Id.* at 1246 (quoting 12 U.S.C. § 2605(f)(1)(A)). "This language suggests there must be a 'causal link' between the alleged violation and the damages." *Id.* (citing *Turner v. Beneficial Corp.*, 242 F.3d 1023, 1028 (11th Cir. 2001) (en banc)).

"[C]osts incurred while preparing a qualified written request for information from a servicer cannot serve as a basis for damages because, at the time those expenses are incurred, there has been no RESPA violation." *Miranda v. Ocwen Loan Servicing, LLC*, 148 F. Supp. 3d 1349, 1355 (S.D. Fla. 2015) (alteration in original) (quoting *Long v. Residential Credit Sols., Inc.*, No. 9:15–CV–80590, 2015 WL 4983507, at *1 (S.D. Fla. Aug. 21, 2015)). However, a plaintiff "may seek as actual damages photocopying costs, postage costs, and reasonable attorney's fees incurred as a result of having to send additional

12

correspondence due to Defendant's failure to respond." *Rodriguez v. Seterus, Inc.*, No. 15-61253-CIV, 2015 WL 5677182, at *3 (S.D. Fla. Sept. 28, 2015). These costs include plaintiff's counsel "sen[ding] [a] . . . letter after the thirty days in which Defendant was required to fully respond to the RFI." *Id.* The Court finds this case law to be persuasive. Accordingly, summary judgment must be granted as to Plaintiff's entitlement to actual damages arising from "alleged photocopying costs, postage costs, and reasonable attorney's fees incurred after [Defendant's] incomplete or insufficient response" to Plaintiff's NOE and RFI. *Blackhurst v. NewRez LLC*, No. 6:20-cv-1509, 2021 WL 6329802, at *4 (M.D. Fla. Sept. 29, 2021) (quoting *Miranda*, 148 F. Supp. 3d at 1355).

## IV. CONCLUSION

For the reasons explained above, it is **ORDERED** and **ADJUDGED** that Plaintiff's motion for partial summary judgment (Doc. 20) is **GRANTED**. Defendant is hereby liable for violating Regulation X, 12 C.F.R. §§ 1024.35 and 1024.36, and, correspondingly, RESPA, 12 U.S.C. § 2605. Plaintiff is also entitled to judgment that she suffered actual damages from Defendant's violations to the extent stated herein.

**DONE** and **ORDERED** in Orlando, Florida, on October 14, 2025.

JOHN ANTOON II
United States District Judge

Copies furnished to:

13

Counsel of Record